Affirmed and Memorandum Opinion filed April 3, 2003









Affirmed and Memorandum Opinion filed April 3, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00162-CV

____________

 

KIMBERLY D. NONMACHER,
Appellant

 

V.

 

MARCELLA B. RITTER, M.D., and BYRON B. HOLT, M.D.,
Appellees

 



 

On
Appeal from the 215th District Court

Harris County, Texas

Trial
Court Cause No. 00-63686

 



 

M
E M O R A N D U M   O P I N I O N








Appellant
Kimberly Nonmacher appeals a judgment dismissing her medical-malpractice
lawsuit as a sanction for her failure to file adequate expert reports as to the
two defendant-doctors.  See Tex. Rev. Civ. Stat. Ann. art. 4590i, '
13.01 (Vernon Supp. 2003).  On appeal,
Nonmacher claims both expert reports represented a good-faith effort to comply
with the statute and, in the alternative, the trial court should have granted
her a thirty-day grace period.  Nonmacher
also complains that the Texas Supreme Court=s directive to examine only the Afour corners@ of a tendered report to determine whether it represents a
good-faith effort at compliance (1) is a violation of the statutory prohibition
against adopting rules in conflict with article 4590i, section 13.01, and (2)
deprived Nonmacher of procedural due process. 
We affirm.

                              Factual and Procedural Background

Appellant
Kimberly Nonmacher apparently was born with a rare vascular disorder known as
hemihypertrophy hemangioma.  In 1998, she
was diagnosed with a fibroid uterine tumor. 
She went to see Dr. Marcella Ritter, an OB/GYN specialist, who
prescribed two injections of Lupron Depot hormone, at three-month intervals,
for the purpose of shrinking the tumor, followed by surgery to remove the
tumor.  Nonmacher=s
surgery was scheduled for April 1999. 
Nonmacher received the first injection in October 1998.  In January 1999, Nonmacher was admitted to
the emergency room with severe abdominal pain, at which time she received the
second injection.  On March 21, 1999,
Nonmacher was admitted to the emergency room with complaints of abdominal pain,
nausea, and paralysis.  Nonmacher alleges
that she tried to see Dr. Ritter the next day, but Dr. Ritter refused to see
her.

On
March 23, Nonmacher began bleeding internally and was again taken to the
emergency room.  There, Dr. Byron Holt
performed an emergency hysterectomy, during which he removed the tumor as well
as Nonmacher=s ovaries.  Following the
surgery, Dr. Holt prescribed hormone replacement therapy, including
estrogen.  Nonmacher alleges that since
her surgery, she suffers from serious blood clotting that has impaired her
quality of life.








Nonmacher
filed suit against both Dr. Ritter and Dr. Holt, alleging medical negligence.  Nonmacher claims Dr. Ritter was negligent in
(1) prescribing the wrong dosage of Lupron Depot, (2) failing to evaluate
Nonmacher=s condition at regular intervals, and (3) failing to
re-evaluate Nonmacher when Dr. Ritter was informed of her complications.  Nonmacher further alleges Dr. Holt was aware
of her rare vascular condition and negligently failed to either research the
condition or consult a hematologist before prescribing estrogen.  In an effort to comply with article 4590i,
section 13.01, Nonmacher filed two separate reports, from two different
doctors, addressing the conduct of Dr. Ritter and Dr. Holt.  See Tex.
Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(d).  Both defendants
filed motions to dismiss Nonmacher=s claims for noncompliance with the statute.  See id. '
13.01(e).  Nonmacher responded to the
motions by contending that the submitted reports were sufficient under the
statute.  In addition, Nonmacher timely
filed separate motions requesting a thirty-day grace period to comply with
section 13.01.  See id. '
13.01(g).  The trial court granted both
defendants= motions to dismiss and denied Nonmacher=s
motions for a grace period.

                                         Sufficiency of Expert Reports

Section
13.01 of article 4590i sets forth certain procedural requirements applicable to
health care liability claims.  Under
subsection (d), a claimant who wishes to pursue her claim is required to
furnish an expert report for each defendant. 
Id. ' 13.01(d).  The statute
defines an Aexpert report@ as 

a written report by an expert that provides a fair summary of
the expert=s opinions as of the date of the report regarding applicable
standards of care, the manner in which the care rendered by the [defendant]
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.

Id. ' 13.01(r)(6).  Thus, the
report must set out, in non-conclusory language, the expert=s
opinions about three elements of the claim: the standard of care, breach, and
causation.  See Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex.
2001).  Subsection (e) provides that if
the plaintiff fails to comply with subsection (d) within the time allowed, the
court shall, on the defendant=s motion, enter an order dismissing the claim with prejudice as
a sanction against the claimant.  See
Tex. Rev. Civ. Stat. Ann. art.
4590i, ' 13.01(e);
Palacios, 46 S.W.3d at 877. 
Finally, subsection (l) requires the trial court to grant a
motion challenging the adequacy of an expert report Aif
it appears to the court, after hearing, that the report does not represent a
good faith effort to comply with the definition of an expert report in
Subsection (r)(6) of this section.@  Tex. Rev. Civ. Stat. Ann. art. 4590i, '
13.01(l).  The report itself must
include the required information within its four corners.  Bowie Mem=l
Hosp. v. Wright, 79 S.W.3d 48,
53 (Tex. 2002); Palacios, 46 S.W.3d at 878.








                                                           Report
on Dr. Ritter

In
her first issue, Nonmacher claims the trial court erred in dismissing her claim
against Dr. Ritter because the report she submitted in connection with this
claim complied with article 4590i, section 13.01.  We review the trial court=s
dismissal of a claim under section 13.01(e) for an abuse of discretion.  Palacios, 46 S.W.3d at 878.  As to Dr. Ritter=s
treatment, Nonmacher presented the report of Dr. Bruce Carr.  The trial court found that Dr. Carr=s
report Adoes
not represent a good faith effort to comply with the definition of an expert
report in Section 13.01(r)(6).@  Dr. Carr=s
report states that a woman being treated with Lupron Depot Ashould
be appropriately evaluated at regular intervals,@ and if the patient reports increasing pain, she Ashould
be seen earlier and re-evaluated.@   This report also
states that, for injections given at three-month intervals, a larger dose of
Lupron Depot should have been prescribed. 
Dr. Carr=s report then states the following:

Thus the drug was probably not having much effect and would
explain why she still had menstrual periods. 
However, the outcome, i.e. surgical removal of the fibroid was performed
as planned, but in an emergency situation which placed the patient at increased
risk.

According
to Nonmacher, the harm as described by Dr. Carr is the Aincreased
risk@
she faced as a result of having her surgery in an emergency situation as
opposed to when it was scheduled.  Dr.
Carr=s
report can fairly be read to suggest that the emergency nature of her surgery
resulted in increased risk.  However, Dr.
Carr=s
report does not provide a fair summary of his opinion regarding the causal
connection, if any, between Dr. Ritter=s alleged negligence and Nonmacher=s
need for emergency surgery or the resulting increased risk to her.








Nonmacher
claims that Dr. Carr=s reference to Asurgical removal of the fibroid . . . in an emergency situation@
as Athe
outcome@
demonstrates that Dr. Ritter=s negligence caused her injury. 
We disagree.  Nothing in Dr. Carr=s
report links this Aoutcome@ to any alleged negligence by Dr. Ritter.  The trial court reasonably could have
determined that Dr. Carr=s report failed to represent a good-faith effort to summarize
the causal relationship.  See Wright,
79 S.W.3d at 53.  Accordingly, the trial
court did not abuse its discretion in granting Dr. Ritter=s
motion to dismiss.  We overrule Nonmacher=s
first issue.

                                                            Report
on Dr. Holt

Nonmacher
similarly claims, in her third issue, that the report concerning Dr. Holt,
prepared by Dr. Brad Van Voorhis, complied with section 13.01.[1]  In this report, Dr. Van Voorhis states that,
in his opinion, consultation with a hematologist or vascular disease expert
before giving Nonmacher estrogen Awould have been prudent.@  Dr. Van Voorhis also
states that other options exist for protection against bone loss that would not
place the patient at increased risk of blood clots, as estrogen would.  We conclude that this language does not
constitute an opinion regarding the applicable standard of care, nor does it
constitute an opinion as to whether Dr. Holt=s treatment failed to meet that standard.  At best, Dr. Van Voorhis=s
report merely states that he would have treated Nonmacher differently and that
another course of treatment was less risky. 
Thus, Dr. Van Voorhis=s report does not satisfy the requirements of section
13.01.  See Palacios, 46
S.W.3d at 880.  The trial court did not
abuse its discretion in granting Dr. Holt=s motion to dismiss. 
Nonmacher=s third issue is overruled.

                               Motions for Thirty-Day Grace Period

In her second and fourth issues, Nonmacher asserts the trial
court erred in denying her a thirty-day grace period to bring her expert
reports in compliance with the statutory requirements.  Nonmacher filed motions as to both defendants
under section 13.01(g), which provides as follows:








Notwithstanding any other provision of this section, if a
claimant has failed to comply with a deadline established by Subsection (d) of
this section and after hearing the court finds that the failure of the claimant
or the claimant=s attorney was not intentional or the result of conscious
indifference but was the result of an accident or mistake, the court shall
grant a grace period of 30 days to permit the claimant to comply with that
subsection.

Tex. Rev. Civ. Stat. Ann.
art. 4590i, ' 13.01(g).  Nonmacher
claims she was entitled to a grace period because her failure to comply with
section 13.01(d) resulted from an accident or mistake.  We review the trial court=s
denial of her motions under an abuse-of-discretion standard.  See Nguyen v. Kim, 3 S.W.3d
146, 151 (Tex. App.CHouston [14th Dist.] 1999, no pet.).

As
to Nonmacher=s claims against both defendants, the trial court found that
her Afailure
to file the required expert report[s] . . . was not the result of an accident
or mistake.@  With respect to Dr.
Ritter, the only Amistake@ Nonmacher identifies in her brief is that her attorney was Atoo
generous in allowing multiple postponements of depositions@
that prevented Dr. Carr from being able to review those depositions before
submitting his report.  Nonmacher makes
the same argument regarding Dr. Van Voorhis=s report on Dr. Holt. 
However, Nonmacher provided the trial court with no evidence to suggest
that these depositions were necessary for Dr. Carr or Dr. Van Voorhis to
provide a fair summary of their opinions regarding the applicable standards of
care, breach, and causation.  Thus, even
if we assume that the actions of Nonmacher=s attorney were an Aaccident or mistake@ as contemplated by section 13.01(g), the trial court did not
err in finding that Nonmacher=s failure to comply with section 13.01(d) did not result from
those actions.








As
to her claim against Dr. Holt, Nonmacher also claims that her attorney=s
mistake in postponing the deposition of Nonmacher=s treating physician, Dr. Joel Abramowitz, prevented her from
using the transcript of Dr. Abramowitz=s deposition as an expert report.  However, in his deposition, Dr. Abramowitz
expressly refused to give his opinion regarding the applicable standard of care
for a doctor in Dr. Holt=s position.  This deposition
transcript would not have satisfied the statutory definition of an Aexpert
report.@  See Palacios, 46 S.W.3d at
880.  Therefore, any delay in deposing
Dr. Abramowitz was not a cause of Nonmacher=s noncompliance with section 13.01(d).

Finally,
Nonmacher contends her attorney mistakenly signed a medical authorization form
that permitted Dr. Holt=s attorneys to talk to Nonmacher=s treating physician about her treatment without Nonmacher=s
attorney being present.  In a
supplemental finding of fact, the trial court found that Nonmacher=s
attorney was not aware of this provision and would not have signed it
otherwise.  However, Nonmacher presented
no evidence why this Amistake@ prevented her from complying with section 13.01(d).  Nonmacher=s argument relies on wholly unsupported speculation that (1)
Dr. Holt=s
attorneys improperly used this authorization to convince Nonmacher=s
treating physician not to provide a report against Dr. Holt and (2) any such
report would have satisfied section 13.01(r)(6).  Because Nonmacher presented no evidence to
support these claims, the trial court reasonably could have determined that
Nonmacher=s noncompliance with section 13.01(d) was not a result of this
mistake by Nonmacher=s attorney.

The
trial court did not abuse its discretion in denying either of Nonmacher=s
motions for a thirty-day grace period.[2]  We overrule Nonmacher=s
second and fourth issues.

                                                    Reliance on Palacios








In her final three issues, Nonmacher claims the trial court
erroneously relied on the Texas Supreme Court=s opinion in Palacios in dismissing her claims.  Specifically, Nonmacher attacks the Palacios
court=s
pronouncement that the only relevant information in deciding a challenge to the
adequacy of an expert report is Awithin the four corners@ of the report.  Palacios,
46 S.W.3d at 878.  Nonmacher argues (1)
the Palacios court adopted a Arule@ in violation of section 13.01(q), and (2) this Arule@
violates Nonmacher=s rights under the Fourteenth Amendment to the United States
Constitution and the Aopen courts@ provision of the Texas Constitution.  See U.S.
Const. amend. XIV; Tex. Const.
art. I, '
13.

                                                               Section
13.01(q)

In
her fifth issue, Nonmacher claims the trial court erred in following Palacios
because the supreme court=s opinion violated section 13.01(q), which provides that A[n]otwithstanding
the provisions of Section 22.004, Government Code, the supreme court may not
amend or adopt rules in conflict with [section 13.01].@  Tex.
Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(q).  Section
22.004 of the Government Code authorizes the supreme court to promulgate rules
of practice and procedure in civil actions and establishes specific procedures
for the adoption and amendment of those rules. 
See Tex. Gov=t Code Ann. ' 22.004 (Vernon Supp. 2002).  The supreme court=s
opinion in Palacios did not adopt or amend any Arules@
as contemplated by section 13.01(q).  See
State Dep=t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992) (A[W]e
do not revise our rules by opinion.@).

Furthermore,
Nonmacher has not shown any conflict between the Palacios Arule@
and section 13.01.  Nonmacher claims that
because section 13.01(l) requires a Ahearing,@ the Legislature intended to permit claimants to present
relevant evidence outside of the report. 
However, the statute=s reference to a Ahearing@ does not necessarily contemplate the presentation of
evidence.  See Black=s Law Dictionary 725 (7th ed. 1999) (distinguishing an Aevidentiary
hearing@
from Aa
hearing at which only legal argument is presented@).  Indeed, unless the
express language or context of the statute requires it, the term Ahearing@
does not even require a personal appearance or oral presentation to the
court.  See Gulf Coast Inv.
Corp. v. NASA 1 Bus. Ctr., 754 S.W.2d 152, 153 (Tex. 1988) (per
curiam).  Accordingly, the Palacios
court did not violate section 13.01(q). 
We overrule Nonmacher=s fifth issue.

                                                      Constitutional
Challenges








In
her sixth and seventh issues, Nonmacher claims the trial court=s
exclusive reliance on the Afour corners@ of the submitted report deprived her of procedural due
process.  Nonmacher argues that because
the trial court refused to consider evidence outside the report on the question
of whether the report represented a good-faith effort to comply with the
statute, she was deprived of her right to a hearing.  As noted above, however, Nonmacher has not
demonstrated any entitlement to an evidentiary hearing.  There is no dispute that Nonmacher was given
an opportunity to be heard before the trial court dismissed her claims.  We overrule Nonmacher=s
sixth and seventh issues.

                                                 Dr. Ritter=s Cross Point

In
her brief, Dr. Ritter raises a single cross point, asserting that the trial
court erred in failing to award her attorney=s fees and court costs. 
Because Dr. Ritter did not file a notice of appeal, we will not consider
this argument.  See Tex. R. App. P. 25.1(c).

                                                               Conclusion

Properly relying on our supreme court=s
opinion in Palacios, the trial court did not abuse its discretion in
dismissing all of Nonmacher=s
claims for noncompliance with article 4590i, section 13.01.  Nor did the trial court abuse its discretion
in denying Nonmacher=s requests for
an additional thirty days to comply.  We
affirm the trial court=s judgment.

 

 

 

 

/s/            Leslie
Brock Yates

Justice

 

 

 

Judgment rendered and Memorandum Opinion
filed April 3, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.











[1]  The relevant
portion of Dr. Van Voorhis=s report states as follows:

 

[T]he use
of estrogen may have contributed to the development of blood clots in Kimberly
Nonmacher. . . .  There are other options
for protection against bone loss that would not place a patient at increased
risk for the development of blood clots as estrogen does.  In my opinion, consultation with a
hematologist or vascular disease expert would have been prudent before giving
this patient estrogen.  On the other
hand, patients with KTS are at risk for developing blood clots even in the
absence of estrogen therapy so it is hard to say the exact cause of the blood
clot that developed.





[2]  Dr. Ritter
also argues that section 13.01 does not provide for a thirty-day extension
when, as here, the claimant timely files a report, but the court finds it does
not represent a good-faith effort to comply with section 13.01(r)(6).  Because we conclude that Nonmacher would not
have been entitled to an extension under section 13.01(g), we need not address
this issue.